The plaintiff, Jeanne Sweeney Mooney, appeals from the entry of summary judgment against her in the Superior Court on her ten-count first amended complaint. On appeal she focuses on two of the counts: one alleging that defendants the city of Newton, its former mayor Setti Warren, and its former police chief Matthew Cummings violated G. L. c. 151B by retaliating against her for lodging a claim of discriminatory acts by Cummings, and the other alleging a civil conspiracy among defendants Cummings, former police lieutenant Edward Aucoin, and former police department employee Vincent Nguyen. We affirm.
Background. The history and record of this case are long and voluminous; we summarize the relevant parts of the summary judgment record in the light most favorable to Mooney. On September 22, 2011, Nguyen, who was responsible for collecting cash and check payments received by the police department, reported to Aucoin, the department's internal affairs officer, that $660 in cash and $1,466.50 in checks were missing. Nguyen accused Mooney of stealing them. Aucoin informed Cummings of the allegations. Aucoin conducted an investigation and concluded that probable cause existed to charge Mooney with larceny. On September 26, 2011, Mooney was placed on paid administrative leave on suspicion of the theft. In the light most favorable to Mooney, the evidence permits the inference that both Nyugen, who reported to Mooney, and Cummings, to whom Mooney reported, had reasons to dislike Mooney prior to the alleged theft.
Rather than initiate criminal charges against Mooney, city officials, including Warren, decided to hire an outside investigator to conduct an independent investigation. The investigation, which took place from October, 2011, through January, 2012, concluded that there was probable cause to believe that Mooney had committed larceny.
In early February, 2012, Cummings was ready to initiate criminal charges against Mooney, but Nguyen, the key witness, was caught shoplifting. Any action against Mooney was delayed while Nguyen's conduct was investigated. With respect to the allegations against Mooney, Nguyen submitted to a lie detector test in March, 2012, which he passed. The charges were further delayed while Mooney was offered a lie detector test posing the same questions that Nguyen had been asked.
On May 21, 2012, Mooney, through counsel, sent Warren a presentment letter as a precursor to a lawsuit under the Massachusetts Torts Claims Act, G. L. c. 258. In her letter, Mooney set forth various allegations of misconduct by Cummings in his job performance, as well as discriminatory acts against her. On May 30 or 31, 2012, Cummings and Aucoin met with lawyers from the city solicitor's office to discuss Mooney's letter. Assistant city solicitor Jeffery Honig suggested holding "the criminal charges over Jeanne Sweeny's [sic ] head until-in hopes that she would submit to a lie detector test and that they would extend this over a long period of time until they negotiated some type of money agreement."
On June 1, 2012, Cummings was summoned to Warren's office, having been told that the mayor "wanted to discuss the demand letter and that type of thing." At that meeting, although there is no evidence that the demand letter was discussed, Warren asked the city solicitor for her opinion "[o]n what they should do and which avenues they should take." According to Cummings, the options under consideration included "[t]he hanging it over their heads for the lie detector test and dragging it on further and further and further." Cummings told Warren that "[he] thought the [c]ity made a mess here, [he didn't] want to hang anything over anybody's head, she's not going to take a lie detector test, and that was about it." "[T]he mayor took about a half a second" to tell Cummings to go ahead with the criminal charges.[3]
On June 5, 2012, Aucoin initiated criminal proceedings against Mooney in the Framingham Division of the District Court Department. After a probable cause hearing held on August 21, 2012, a clerk magistrate found probable cause to issue a criminal complaint charging Mooney with larceny. She was acquitted after a jury trial held in May, 2013, and returned to work in late 2013. Meanwhile, the city commissioned an independent investigation of Mooney's allegations of Cummings's misconduct, which the investigator substantiated. The city relieved Cummings of his duties in October, 2012. An arbitrator later determined that the city's action against Cummings was unfounded.
Discussion. 1. Retaliation. To prevail on a claim of retaliation, an employee must show that the employer took adverse action against the employee in response to the employee's protected activity. Verdrager v. Mintz, Levin, Cohen, Ferris, Glovsky & Popeo, P.C., 474 Mass. 382, 405-406 (2016). "[T]he employer's desire to retaliate against the employee must be shown to be a determinative factor in its decision to take adverse action." Psy-Ed Corp. v. Klein, 459 Mass. 697, 707 (2011). In this case, Mooney must prove that Warren[4] ordered the initiation of criminal charges against her in retaliation for her presentment letter alleging discrimination by Cummings (and threatening to sue the city). Although Mooney would bear the ultimate burden at trial, at the summary judgment stage Warren, as the moving party, must affirmatively demonstrate the absence of a genuine issue of material fact on every relevant issue. See Sullivan v. Liberty Mut. Ins. Co., 444 Mass. 34, 39 (2005) ; Bulwer v. Mount Auburn Hosp., 473 Mass. 672, 683 (2016).
The summary judgment record provides no evidence that Warren directed Cummings to initiate charges against Mooney because of her letter. In the light most favorable to Mooney, the evidence permits the inference that Warren gave Cummings permission to go forward-which Cummings had wanted to do months before Mooney sent the letter-after a discussion of the city's options for dealing with Mooney's letter. Thus, the question is whether "a reasonable jury could infer," Bulwer, supra at 682, from this sequence of the events that Warren instructed Cummings to proceed not on the merits of the charges against Mooney, but because she complained and threatened suit.
"Of course, '[t]he mere fact that one event followed another is not sufficient to make out a causal link.' " Mole v. University of Mass., 442 Mass. 582, 592 (2004), quoting from MacCormack v. Boston Edison Co., 423 Mass. 652, 662 n.11 (1996). "Where, as here, adverse employment actions or other problems with an employee predate any knowledge that the employee has engaged in protected activity, it is not permissible to draw the inference that subsequent adverse actions, taken after the employer acquires such knowledge, are motivated by retaliation." Id. at 594. We agree with the motion judge that this is not a case in which the sequence of events permits a reasonable inference of retaliation.
Mooney is not entitled to an inference of causation as a "satisfactorily performing employee" against whom adverse action is taken "in the immediate aftermath" of protected activity. Mole, supra at 592. We understand the term "satisfactorily performing employee" as used in the Mole decision to refer to an employee who has not, prior to the exercise of protected activity, given the employer any reason to take adverse action. Even if Mooney was otherwise satisfactorily performing her job duties, her suspension on allegations of larceny, which occurred long before she submitted her demand letter, negates any inference that can be drawn from the timing of when criminal charges were filed.
2. Civil conspiracy. To prove civil conspiracy, Mooney was required to "show an underlying tortious act in which two or more persons acted in concert and in furtherance of a common design or agreement." Bartle v. Berry, 80 Mass. App. Ct. 372, 383-384 (2011). "It is not sufficient to prove joint tortious acts of two or more persons...." Gutierrez v. Massachusetts Bay Transp. Authy., 437 Mass. 396, 415 (2002), quoting from Nolan & Sartorio, Tort Law § 99, at 134 (2d ed. 1989). Rather, the plaintiff must demonstrate that the participants acted pursuant to an agreement. Ibid.
Mooney's theory is that Nguyen, Cummings, and Aucoin conspired to bring false charges against her[5] as early as the day of the alleged theft or, at the latest, after Nguyen was caught shoplifting. "[A]n inference of an implied agreement could properly be drawn from the conduct of two or more parties," Kyte v. Philip Morris Inc., 408 Mass. 162, 167 (1990). Accordingly, to be entitled to summary judgment, the defendants must show that no reasonable jury could find or infer the existence of an agreement among them to pursue false criminal charges against Mooney.
We agree with the motion judge that the defendants carried their burden. In the light most favorable to Mooney, the evidence supported the inference that Nguyen and Cummings each harbored ill-will against Mooney for different reasons. Again, indulging all inferences in Mooney's favor, the record might even support her claim that Nguyen made false statements concerning her involvement in the theft. However, the summary judgment record provides no evidence of ill will on the part of Aucoin or any indication that he or Cummings had an agreement with Nguyen, or knowingly assisted or encouraged Nguyen, to pursue groundless charges. While there was evidence showing that they all acted independently to press charges, there is no evidence in the record that would warrant an inference of concerted action to pursue false charges.
Judgment affirmed.

Warren testified in his deposition that he told Cummings from the outset that any decision regarding criminal prosecution of Mooney were for Cummings to make. Warren categorically denied making any decision with respect to the criminal charges or taking part in any conversation about using the threat of criminal charges as a bargaining chip with Mooney.

As Mooney conceded in her opposition to Cummings's summary judgment motion, Cummings could not be liable for retaliation under c. 151B because his desire to proceed against Mooney was manifest long before she sent the demand letter. Thus, any liability on the part of the city necessarily must be based on Warren's actions. See Bain v. Springfield, 424 Mass. 758, 765 (1997).

The tort of malicious prosecution requires proof that the defendants "instituted criminal proceedings against her with malice and without probable cause." Correllas v. Viveiros, 410 Mass. 314, 318 (1991).